UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL G. [1]

          Plaintiff,

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION

          Defendant.

Case No. 3:21-cv-01516-MK

**OPINION AND
ORDER (CORRECTED)**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Michael G. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 3. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for an immediate calculation of benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application DIB in May 2019 and for SSI in November 2019 with an alleged onset date of May 15, 2015. Tr. 13.[2] Plaintiff's applications were denied initially in October 2019 and upon reconsideration in February 2020. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held in December 2020. *Id.* On February 16, 2021, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 28–29. The Appeals Council denied Plaintiff's request for review. Tr. 1. Plaintiff timely appealed.

## FACTUAL BACKGROUND

Plaintiff was 36 years old on his alleged onset date and is currently 43 years old. Tr. 40, 45. He was enrolled in a graduate program and has no past relevant work experience. Tr. 22, 27. Plaintiff alleges disability based on obesity, an undifferentiated autoimmune disorder, fibromyalgia, small fiber neuropathy, anxiety disorder, and posttraumatic stress disorder ("PTSD"). Tr. 17.

## LEGAL STANDARD

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v.*

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11-1.

*Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation" (citation omitted)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation and internal quotations omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment does not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed

impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations the claimant's impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, the claimant is not disabled; if the claimant cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since his alleged onset date. Tr. 16-17. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, an undifferentiated autoimmune disorder, fibromyalgia, small fiber neuropathy, anxiety disorder, and PTSD. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 18–20. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff could] occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, or crawl. [Plaintiff could] frequently handle and finger bilaterally; [he could] push and pull as much as [he could] lift and carry; and [could] occasionally operate foot controls bilaterally. [Plaintiff] should [have avoided] concentrated exposure to extreme heat and cold, humidity, and work hazards such as dangerous moving machinery and unprotected heights. He [was] limited to performance of simple routine tasks and [could] have occasional public contact and co-worker contact.

Tr. 20–21.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 27. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite his impairments. *Id.* The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 28–29.

## DISCUSSION

Plaintiff asserts that remand is warranted for two reasons: (1) the ALJ erred by improperly rejecting his subjective symptom testimony; (2) the ALJ erred in rejecting medical opinion evidence. The Court addresses each argument in turn.

**I.      Subjective Symptom Testimony**

Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony. Pl.'s Op. Br. 4–9, ECF No. 18. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not

credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified that he experienced burning nerve pain upon awaking and at night due to his fibromyalgia and connective tissue disorder. Tr. 46-48. He described how this pain affected his hands, feet, wrists, shoulders, eyes, and legs. Tr. 46-48, 325. Plaintiff testified that due to the nerve pain, he could not engage in his daily activities for long and instead did his activities in short increments. Tr. 52. These activities included gripping objects, taking his dog outside, doing household chores, and driving. Tr. 47–68.

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 (S.S.A. Oct. 25, 2017).

Plaintiff testified that his pain increased when stressed. Tr. 48. Plaintiff also testified that he experienced toe pain from gout. Tr. 48. He wrote in his function report that his hands did not work at times and he dropped items about twice a day. Tr. 331. Plaintiff testified that he was obese, weighing over 300 pounds while having a height of 6 feet, 2 inches. Tr. 60. He testified that he had experienced hypoglycemia, that could be triggered by the weather, food, or stress. Tr. 49. Plaintiff testified that his fatigue increased in hot weather. Tr. 49. He said that with cold weather he experienced getting pleurisy in his lungs and felt his trachea start closing. Tr. 49. He testified that he had a thyroid issue that he managed with medication. Tr. 50.

Plaintiff testified that he experienced dizziness, difficulty talking, difficulty focusing, lack of awareness, anxiety, and agitation every morning. Tr. 46, 324. In his function report, Plaintiff wrote that he experienced inconsistent sleep, tiredness, and limited mental energy. Tr. 324. Plaintiff also testified that he felt anxiety regarding social interactions and in enclosed spaces. Tr. 50-51. Plaintiff testified that he avoided situations that could cause him flashbacks due to PTSD. Tr. 51. He testified that these issues seemed to worsen each year. Tr. 58.

The ALJ rejected Plaintiff's subjective symptom testimony. Tr. 22. The Commissioner argues that the ALJ supplied two valid rationales for doing so: (1) inconsistencies with his activities of daily living and (2) inconsistencies with the medical record.

### A. Activities of Daily Living

The Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon his activities of daily living. Def.'s Br. 4, ECF No. 19. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) where the activities contradict a claimant's testimony; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not

be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The Commissioner asserts that Plaintiff's ability to attend graduate school with accommodations, perform basic household chores, attempts to complete tasks outside such as gardening roses, shop for groceries, and handle money conflict with Plaintiff's testimony. Def.'s Br. 4–5. The Commissioner also cited Plaintiff's reported desire to spend more time with friends and his wish to fish in state parks as contradicting Plaintiff's subjective symptom testimony. *Id.* These activities, however, were insufficient to reject Plaintiff's testimony for multiple reasons.

First, the activities the ALJ summarized do not conflict with Plaintiff's testimony. For example, although the ALJ cited Plaintiff's ability to attend graduate school, Plaintiff explained that he was attending with accommodations and quit schooling due to increasing hand pain. Tr. 52-53 ("I stopped . . . . I couldn't even take my final because that's when I couldn't even . . . write for 30 seconds or so before my hands just burn"). On his ability to drive, Plaintiff explained that he could drive only after the first three hours after waking up, otherwise he would go through red lights or almost hit pedestrians. Tr. 46. Plaintiff had indicated to Dr. Scharf that he shopped quickly at the grocery due to increasing pain when standing. Tr. 787. Plaintiff reported to Dr. Scharf that he could only do laundry and vacuuming about twice a month. Tr. 787. Plaintiff testified at the hearing that he alternates between periods of rest and work in order to complete his household tasks. Tr. 47, 49.

The Ninth Circuit has consistently held that such modest activity levels are not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Commissioner relies on *Molina* to assert that the Plaintiff's activities discredit the Plaintiff's testimony. Def.'s Br. 4; *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012). However, *Molina* explained that activities may be grounds for discrediting testimony only to the extent they contradict claims of a *totally* debilitating impairment. *Id.* at 1112-13. Here, while Plaintiff did testify to experiencing more issues than the medical record corroborated, Plaintiff's activities did not contradict the impairments that Plaintiff alleged, such as not being able to stand on his feet for more than two hours or experiencing dizziness. *Molina* is therefore distinguishable. There, the claimant alleged she could not tolerate even minimal human interaction and doing so would cause her panic attacks, while the evidence in the record showed that the claimant engaged in multiple activities that included human interaction, such as taking her grandchildren to school, attending church, and shopping. *Id.* at 1113. Here, Plaintiff's alleged debilitating impairments are consistent between his testimony and the medical record.

Second, the ALJ's discussion of Plaintiff's daily activities failed to explain why specific symptom testimony was not credible when compared to the Plaintiff's activities. As this Court has observed, an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *David J. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00647-MK, 2021 WL 3509716, at *4 (D. Or. Aug. 10, 2021) (citation omitted).

Other than stating that Plaintiff's activities undermine the Plaintiff's subjective symptom testimony, the ALJ failed to explain how any of the listed activities undermined his subjective symptom testimony. Therefore, Plaintiff's activities of daily living were not a clear and convincing reason to reject Plaintiff's testimony. *See id.*

The Commissioner asserts that the ALJ properly discounted Plaintiff's allegations based on inconsistencies with the objective medical record. Def.'s Br. 3–4. However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Because the ALJ failed to provide a clear and convincing rationale that Plaintiff's daily activities contradict Plaintiff's subjective symptom testimony, the ALJ's analysis of the medical record cannot be a reason to reject the Plaintiff's subjective symptom testimony on its own. The ALJ erred in doing so.

B.  **Medical Record**

As noted, the Commissioner asserts that the ALJ properly discounted Plaintiff's allegations because they were inconsistent with the objective physical and mental medical evidence. Def.'s Br. 3–4. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

An independent review of the objective medical record demonstrates that Plaintiff's subjective complaints were consistent with treatment records. Plaintiff has presented with fibromyalgia beginning in 2010. Tr. 56, 1060. A treatment record from February 2018 confirmed Plaintiff's fibromyalgia diagnosis. Tr. 519. Plaintiff also consistently presented with chronic

pain. *See* Tr. 377, 419, 437, 442, 462, 473, 505, 516, 519, 609, 620, 623, 642, 785. A January 2020 lab report from Tuality Healthcare states that chart notes suggested his lab testing was positive for double-stranded DNA and anticardiolipin IgG, which are indicative of autoimmune diseases. Tr. 1050. A biopsy indicated he had small fiber neuropathy. *Id.*

Plaintiff testified that he had thyroid and hypoglycemia issues. Medical records reflect that Plaintiff received treatment for his thyroid diagnosis. Tr. 478, 573, 1253. Records reflect that Plaintiff had reactive hypoglycemia, which was treated by a controlled diet. Tr. 476, 482, 576, 580.

Plaintiff testified that he had difficulty focusing. Therapy progress notes in August 2020 noted that Plaintiff needed redirection to get back on topic. Tr. 1193, 1196, 1199. Multiple therapy notes and medical records document Plaintiff's presentation of anxiety and PTSD symptoms. Tr. 371, 384, 416, 422, 433, 451, 452, 457, 461, 474, 505, 516, 525, 531, 608, 629, 757, 766, 1110, 1189, 1190, 1197, 1197, 1200, 1203, 1250.

Plaintiff also testified that he experienced difficulty talking in the morning. Pl's Br. 6. Medical records document Plaintiff having abnormal speech on multiple occasions. Tr. 422, 453, 527, 631, 759, 1110, 1251.

Thus, the medical record was not a legally sufficient reason to reject Plaintiff's subjective symptom testimony.

## II.    Medical Evidence

Under the new regulations, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must

consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[ ], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[ ] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the providers relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

The ALJ evaluated the opinions of three medical providers and also weighed the prior administrative findings of the State Agency consultants. None of the prior administrative findings were found persuasive, and the parties do not dispute the ALJ's weighing of those findings. Thus, the Court examines only the ALJ's evaluation of the medical provider opinions.

Randolph Pitts, M.D., served as Plaintiff's primary care provider and served as one of Plaintiff's examining physicians during the relevant period. Tr. 909. Dr. Pitts observed that Plaintiff was obese, had hypothyroidism, experienced fatigue, had long term problems with an immunocompromised state, was anxious, and experienced insomnia. Tr. 511–13, 521, 527, 534, 536. Dr. Pitts diagnosed Plaintiff with fibromyalgia, neuropathy, PTSD, immunodeficiency, and hypothyroidism. Tr. 909. In his Residual Physical Functional Capacity Assessment, the doctor opined that Plaintiff could only lift and carry less than ten pounds for less than one third of the day. Tr. 910. He opined that Plaintiff could only stand and walk two minutes at a time, sit 30 to

60 minutes at a time for one hour total. *Id.* He opined that Plaintiff could only perform postural and manipulative functions for less than one third of the day. *Id.* He opined that Plaintiff was markedly limited in climbing, stairs, balancing, stooping, kneeling, and crawling. *Id.* Dr. Pitts opined that Plaintiff was markedly limited in his mental functions and would need to miss 16 hours of work per month. Tr. 911–13.

The ALJ found Dr. Pitt's opinion "not persuasive." Tr. 26. The ALJ cited two reasons for his finding. *Id.* The ALJ stated that the opinion was "not supported by reference to objective clinical and diagnostic evidence" and that the opinion was inconsistent with Plaintiff's "participation in graduate school, working outside, breeding roses, maintaining friendships, and [his] reported desire to visit state parks to go fishing." *Id.*

Daniel L. Scharf, Ph.D., served as a consultive psychologist during the relevant period. Tr. 26. Dr. Scharf observed that Plaintiff was casually dressed and fairly groomed with mild body odor. Tr. 787. He noted that Plaintiff generally spoke freely and spontaneously throughout the examination, observed extreme symptoms at times, and several times during the examination over focused on his reported medical conditions which required redirection to the topic at hand. Tr. 787–88. Dr. Scharf found that Plaintiff was clear in his thinking and speech, after conducting a mental examination with logical facts. Tr. 787. He observed that Plaintiff was able to understand and remember basic instruction. Tr. 788. Dr. Scharf diagnosed Plaintiff with a Trauma Related Disorder, Somatic Symptom Disorder, and Fibromyalgia. Tr. 787.

Dr. Scharf opined that Plaintiff could likely manage benefit funds if awarded. Tr. 788. He opined that the Plaintiff would likely have problems with his attention after 2 to three hours. *Id.*

The ALJ found Dr. Scharf's opinion "somewhat persuasive." Tr. 26. The ALJ stated that the opinion was "partially consistent with the Plaintiff's reported history," specifically citing the fact that Plaintiff quit graduate school due to hand pain instead of mental deficits. *Id.*

Iulia Vasile, MFT, served as Plaintiff's therapist during the relevant period. Tr. 27. Ms. Vasile observed Plaintiff to have low moods, anxiety, flashbacks, nightmares, emotional distress, physical reactivity to trauma reminders, decreased interest in activities, feelings of isolation, sleep difficulties, attention difficulties, forgetfulness due to mental fatigue, and hypervigilance. Tr. 1183. Ms. Vasile treated Plaintiff for PTSD with therapy sessions beginning in 2020. *Id.*

Ms. Vasile opined that the Plaintiff's condition satisfied the criteria of listing 12.15 under sections A, B, and C. Tr. 1184. She identified marked limitations in three areas of understanding, remembering, or applying information. Tr. 1184-1186. Ms. Vasile identified at most moderate limitations in concentration, persistence, and pace and in interacting with others. Tr. 1186. She explained that "concentration, persistence, and pace can vary depending on physical health, anxiety levels, and confusional state and can be anywhere from no limitation to markedly limited." *Id.* For interacting with others, Ms. Vasile explained that Plaintiff "does well with interacting with others unless when there is conflict or he feels trapped by someone in a position of power which increases his anxiety." *Id.* Ms. Vasile did not identify limitations in Plaintiff's ability to adapt or manage oneself, stating, "I am not sure how [Plaintiff] would respond in the above situations in a work setting as he has not had a job during the time we have been doing therapy and my answers are speculative at best." Tr. 1185. She opined that Plaintiff would need unscheduled breaks and be absent from work 16 hours or more per month. Tr. 1187.

The ALJ found Ms. Vasile's opinion "not persuasive." Tr. 27. The ALJ cited multiple reasons for finding Ms. Vasile's opinion not persuasive. *Id.* First, he cited Ms. Vasile's

statements regarding her inability to know symptoms prior to the date the Plaintiff was last insured. *Id.* He noted that Ms. Vasile wrote that her opinions about how well Plaintiff could work would be "speculative" and only based on Plaintiff's presentation in therapy. *Id.* He cited Ms. Vasile's observations that Plaintiff's concentration varied depending on his physical health and could even have no limitation. *Id.* The ALJ cited Ms. Vasile's opinion that Plaintiff interacts well with others unless he is in conflict with someone or he feels trapped by someone in a position of power. *Id.* The ALJ found Ms. Vasile's opinion inconsistent with treatment records, stating that while some records noted the Plaintiff needed reminders to track his thoughts, he was able to be redirected. *Id.* The ALJ stated that Ms. Vasile's opinion was inconsistent with Plaintiff's "participation in graduate school, his hobby breeding roses, his maintenance of friendships, or his desire to visit state parks to go fishing." *Id.*

The ALJ erred in finding Dr. Scharf's opinion only partially persuasive, and Dr. Pitts and Ms. Vasile's opinions not persuasive. He failed to explain how the medical evidence was inconsistent with the medical opinions, and he failed to explain why Plaintiff's activities were inconsistent with the medical opinions.

First, the ALJ cited objective medical evidence and treatment records as grounds for rejecting the medical opinions, without explaining the contradictions between the opinions and what the medical record reflected. The failed to provide the requisite reasoning explaining why he concluded Dr. Pitt's opinion was not supported by the medical evidence.

In weighing Dr. Scharf's opinion, the ALJ relied on only one fact in concluding the opinion was partially consistent with the Plaintiff's testimony. He cited Plaintiff's statement that Plaintiff quit graduate school due to pain from his hands and not mental deficits. The ALJ then made a conclusory statement that Plaintiff was capable of doing at least simple routine tasks. He

did not explain what the scope of those simple and routine tasks would involve, nor did he explain the significance of Plaintiff's ability to perform such tasks.

Finally, the ALJ found Ms. Vasile's opinion inconsistent with treatment records without explaining how it was inconsistent with treatment records. The ALJ relied on one treatment record that stated the Plaintiff was able to be redirected after he lost his train of thought, to refute Ms. Vasile's opinion on Plaintiff's disabling condition. Additionally, the ALJ relied on Ms. Vasile's statement that her answers about the Plaintiff's work ability would be speculative to frame her full opinion as inconsistent with the medical record and Plaintiff's activities and interests.

The ALJ's dismissal of Ms. Vasile's opinion because she employed the word "speculative" to describe her opinion of Plaintiff's ability to work misses the substantive point. The Court does not read Ms. Vasile's use of the word "speculative" to mean her opinion on Plaintiff's disabling condition and its limitations to be speculative. Rather, when reading her "speculative" reference in context she explained that because Plaintiff had not been actually working while she provided therapy, then her opinion about his ability to work would be speculative. The ALJ misapplies the scope of Ms. Vasile's use of the term "speculative" and it does not withstand scrutiny. In all three evaluations, the ALJ cherry picked evidence in support of his presupposed conclusion of Plaintiff's ability based on his opinion of Plaintiff's subjective symptom testimony, which the Court has already rejected. *See Ghanim*, 763 F.3d at 1162; *see also Holohan*, 246 F.3d at 1207. Moreover, the ALJ failed to "do more than offer his own conclusions," to reject a medical opinion, an ALJ "must set forth [their] own interpretations and explain why they, rather than the doctors', are correct. *Regennitter*, 166 F.3d at 1299.

Second, the ALJ cited to various activities Plaintiff engaged in asserting they were inconsistent with the medical opinions, without providing sufficient explanations. For his analysis of Dr. Pitts and Ms. Vasile's opinions, the ALJ found the opinions inconsistent with Plaintiff's participation in graduate school, his hobby breeding roses, his maintenance of friendships, or his desire to visit state parks to go fishing. The ALJ did not explain how these opinions were inconsistent with those activities. Particularly troubling is the ALJ's attribution of a desire to visit state parks and fish as something inconsistent with Plaintiff's diagnoses.

As such, the ALJ failed to supply legally permissible rationales for rejecting, or rejecting in part, the three medical providers' opinions.

### III. Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are

"inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and for discrediting the medical opinions.

As to the second requisite, although the Commissioner asserts remanding for an award of benefits would be inappropriate based upon a lack of medical evidence, from a practical standpoint, Plaintiff has already undergone one consultative examination and the Court finds remanding to further develop the record in that regard would serve little useful purpose. The Court notes that the ALJ did not find fully persuasive any of the doctors who actually treated or examined Plaintiff, finding only one doctor somewhat persuasive. *See Garrison*, 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted).

As to the third requisite, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Dr. Scharf, Ms. Vasile, and Dr. Pitts all agreed that Plaintiff would struggle with sustained attention. Dr. Pitts and Ms. Vasile both identified marked limitations in Plaintiff's mental functions, and both opined that Plaintiff would need to miss sixteen hours a month. The Vocational Expert testified that if a person spent time away from work tasks twenty percent of the day or needed to be absent two or more days a month, that person would not be able to engage in competitive employment. Tr. 74. Thus, in fully crediting

the medical opinions as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had *marked limitations* in her ability to . . . *maintain regular attendance, and be punctual within customary tolerances*" combined with VE testimony that "individuals who miss *two or more* days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits) (emphasis added), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010); *see also Hazen v. Colvin*, 2015 WL 1186776, at *7 (E.D. Wash. Mar. 16, 2015) (crediting doctors' opinions that the claimant had "marked limitations and an inability to sustain basic work activities" and remanding for an immediate calculation and award of benefits).

Lastly, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. As such, the Court concludes the proper remedy in this case is to remand for a calculation of benefits. *See Garrison*, 759 F.3d at 1022–23.

## CONCLUSION

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 5th day of April 2023.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge